[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue in this case concerns the collection of a conveyance tax in the amount of $58,056 levied in February of 1996 on property located at 362 Hattertown Road in Monroe, Connecticut, pursuant to § 12-504 of the Connecticut General Statutes. The property in question comprises 47 acres out of a total of 65 acres of property originally owned by Alexander Zimany. Mr. Zimany had the 47 acre section of his property declared as forest land on September 29, 1971, by the State Forester. (See Exemption Certificate 2427, plaintiff's exhibit D.) Mr. Zimany died in 1983 leaving a will wherein he provided that if his wife, Dorothy T. Zimany, survived him she would receive all of his estate either outright or in trust. Mrs. Zimany did survive her husband and became his sole beneficiary. At no time from 1971 until his death in 1983 did Mr. Zimany sell or change the use of the 47 acre parcel.
Mrs. Zimany owned the property in question until her death on September 26, 1986. During her ownership she neither sold or changed the use of the 47 acres from forest land. During her ownership and at her request, the Bureau of Forestry issued certificate number 2427A on September 28, 1984, superceding certificate number 2427, the purpose of which was to CT Page 8342 change the owner of records to the Estate of Alexander A. Zimany do Dorothy Zimany, Executrix from Alexander Zimany (plaintiff's exhibit E) On her death in 1986, Mrs. Zimany left a will leaving all of her estate, including the 47 acres herein, to her children Richard T. Zimany and Alexandra T. Zimany and named them co-executors of her estate. (See plaintiff's exhibit B.)
On December 20, 1990, Richard T. and Alexandra T. Zimany, as executors of their mother's estate, by executor's deed conveyed the 65 acre tract originally owned by their father of which 47 Lacres had been declared forest land to a corporation known as Stepney Pond Estates, LTD., for no consideration. That corporation had been created by Richard and Alexander Zimany for the purpose of receiving title to the property in question. The stock in that corporation was owned equally by Alexandra T. Zimany, who was its president, and her brother Richard who was its vice president. Apparently, this was all done while the estates of their parents were still open. (See Certificate of Devise attached to plaintiff's exhibits A and B.)
Thereafter on February 21, 1991, the Monroe Tax Assessor, Frank Kascak, by letter to Stepney Pond informed it "to keep your forest classification on the property located at 362 Hattertown Road you must notify the State Forester that there was a change of title." (Plaintiff's exhibit F.) Richard Zimany then asked his wife Mary to find out what had to be done to accomplish this and she did. She made some phone calls to the Town and State to determine what to do. She testified that her sole purpose was to keep the classification that had been on the property since 1971 and never asked for a new classification or a reclassification. They wanted to maintain what they had. As a result of her actions, she received from the Bureau of Forestry certificate number 2427B (plaintiff's exhibit G) issued on October 21, 1991, which superceded certificate number 2427A and which listed the purpose of the certificate to change the owner of record from the Estate of Alexander Zimany, c/o Dorothy T. Zimany, Executrix to Stepney Pond Estate, LTD. When the executors' deed was recorded at the Monroe Town Hall on December 31, 1990, no conveyance tax of any kind was paid.
The parties stipulated that forestry certificates dated September 28, 1984, and October 21, 1991, (plaintiff's exhibits E and G) were not reclassifications but simply a continuation of the classification of 1971, applied for the purpose of reflecting the current owner of the property.
Stepney Pond Estates, LTD, some time in 1994, contracted to sell the 65 acre parcel containing the 47 acres of forest land to Jans Construction Company but the closing did not take place until February of 1996. It was CT Page 8343 at that time that the plaintiff first became aware that the defendant, through its tax assessor, had placed a lien indicating that the 47 acres had been classified as forest lands in accordance with § 12-504a on October 1, 1991. Therefore, at the time of the closing, the town required that the plaintiff pay a conveyance tax of $58,056 before it would record the deed. In this case, the plaintiff is seeking the return of that sum.
At no time from December 20, 1990, until it sold to Jans Construction in February of 1996, did Stepney Pond Estates, Ltd., sell or change the use of any of the 47 acres of forest land.
The defendant admits that the Assessor miscalculated the amount of the conveyance tax due and, as a result, the defendant's attorney forwarded to the plaintiff's then attorney a check in the amount of $8,026 on November 16, 1998. Neither the plaintiff or its attorney ever negotiated that check.
The court agrees that the issue in this case is whether the transfer by Executor's Deed on December 20, 1990, of the subject property to the corporate plaintiff, which was owned equally by the executors and where the executors were the sole beneficiaries of their mother's estate pursuant to will, operated to begin a new holding period under § 12-504a
of the Connecticut General Statutes. The court concludes that it does not.
Connecticut General Statutes § 12-504a(b) states that when an owner of land classified as forest land sells the property within ten years of its classification that a portion of the sales price may be recovered by the municipality. That section goes on to say that no conveyance tax shall be imposed following the tenth year of ownership by such record owner.
Connecticut General Statutes § 12-504c then sets forth a series of "Excepted Transfer" including § 12-504c(k) which reads,
 ". . . . property transferred as a result of death by devise or otherwise and in such transfer the date of acquisition or classification of the land for purposes of sections 12-504a to 12-504f inclusive, whichever is earlier, shall be the date of acquisition or classification of the decedent."
The most instructive case on the subject is Timber Trails Associatesv. Town of New Fairfield, 226 Conn. 407 (1993). Admittedly, the issue there was slightly different than the issue here. In Timber Trails the court was not dealing with the conveyance tax itself, but a reassessment CT Page 8344 of the property after it was transferred to the plaintiff pursuant to the dissolution of a corporation in which the plaintiff was the sole shareholder. In that case also no conveyance tax was paid and the transfer was for no consideration. The specific issue in that case was whether the assessor could declassify property as forest land upon the transfer of the property without consideration pursuant to a corporate dissolution from a corporation to its sole shareholder. In the early 1970's, the plaintiff's predecessor, Timber Trails Corporation, had the land in question classified as forest land. In 1988, the corporation was dissolved and all the assets including this property was transferred to the plaintiff. The State Forester, upon notification of the change of the owner of record of the property, issued to the plaintiff a certificate that continued the designation of the parcels as forest land. That is essentially what happened here.
In this case there can be no question that if the executors of the estate of Dorothy Zimany had simply waited for a Certificate of Devise to be issued in their names (which actually was done) and then they sold to Jans Construction in 1996, the defendant would have no claim for a conveyance tax because of § 12-504c(k) and the fact that the property had been continuously classified as forest land since 1971. The defendant argues, however, that because the executors transferred it to the plaintiff, which the executors owned, that that somehow created a new ten year holding period. The court does not agree.
Section 12-504h provides that once forest land has been classified as forest land by a record owner it shall remain so classified without the necessity of filing a new classification until the use of the land changes or there is a sale. The fact that superceding certificates merely changing the names on the certificates are issued by the forestry department, as was done here and in Timber Trails, does not in any way equate to the status of new classification.
In this case there is no question but that this was merely a continuation of the 1971 forestry exemption and that is exactly what the parties have stipulated to at trial. In addition, in the assessor's own words in his letter to the plaintiff dated February 21, 1991, after the conveyance to the plaintiff he states in plaintiff's exhibit F:
 "This is to inform you that in order to keep your Forestry Classification on the property located at 362 Hattertown Road you must notify the State Forester that there was a change of title.
In no way can that language be interpreted to mean that the assessor was suggesting or requiring a new or reclassification. The word "keep" is CT Page 8345 consistent with continuation and the purpose was only to "inform" the forester of a change in record owner.
As was stated by our Supreme Court in Timber Trails, supra, at page 414, "The property could not have been reclassified pursuant to §12-504b(1) because it is undisputed that the use of the land has not changed. Nor would reclassification of the property have been permitted under § 12-504b(2) because the land was not `sold' by the corporation to the plaintiff." That is exactly the case here.
There is no question that a sale did not take place in this case in 1990. Because the property in question had been classified as forest land for more than ten years before the deed to the plaintiff in 1990 and because that occurrence did not trigger an automatic declassification, the defendant had no right to declassify it or to require that a conveyance tax be paid in the amount of $58,056 or the subsequently calculated figure upon the sale of the property in 1996.
The court in Timber Lakes concluded that § 12-504f under the circumstances of that case did not automatically terminate the property's forest land classification and the same can be said here.
The defendant here also argues that the transfer does not meet the specific language of any of the excepted transfers under § 12-504c. The plaintiff on the other hand argues that this transfer falls under § 12-504c(k) "property transferred as a result of death by devise or otherwise." While this court agrees with the reasoning of the plaintiff, resort to that exemption may not be necessary. When confronted with a similar argument in Timber Lakes that the transfer of real property for no consideration in connection with a corporate dissolution is not one of the several exemptions specified in the statute and therefore could properly have declassified the property, the court stated that, "Because no conveyance tax was due pursuant to § 12-504a, however, the issue of exemption under § 12-504c is irrelevant to our analysis." Again, the court in Timber Lakes concluded:
 "Accordingly, we conclude that the state forester properly continued the property's forest land designation pursuant to the unambiguous direction of § 13-504b and that the defendants were without authority to declassify it."
This court concludes from that statement of the law that if the assessors had no right to declassify the property and reassess it, they had no authority to declassify it for the purpose of creating a new ten year recapture period. Because of its decision on this issue, the court CT Page 8346 will not discuss the other constitutional claims of the plaintiff.
The plaintiff is also asking for interest on the judgment. That is a matter within the court's discretion, and the court concludes it should be awarded here. The defendant had no right to collect the conveyance tax and has deprived the plaintiff of that money. The court will therefore enter judgment for the plaintiff in the amount of $58,056 with interest at 10 percent from February 26, 1996, to November 16, 1998, when the defendant attempted to refund $8,026 and interest thereafter at 10 percent on $50,030 to the date of payment.
GORMLEY, JUDGE.